IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CHAD MCCLURE,<br><br>    Plaintiff,<br><br>    v.<br><br>A. HYERS; G. AUGUSTIN; M. AREBECK; D. HAERS; D. COX; A. JOHNSON; K. BELL; RICKY STONE; SHARON LEWIS; HILTON HALL, and D. STEWART,[1]<br><br>    Defendants. | CIVIL ACTION NO.: 5:18-cv-32 |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff brought this 42 U.S.C. § 1983 action while incarcerated at Coffee Correctional Facility in Nicholls, Georgia, in order to challenge certain conditions of his confinement. Doc. 1. Plaintiff also submitted a motion to proceed *in forma pauperis*, which this Court granted. Docs. 2, 5. After the requisite frivolity review, I **RECOMMEND** the Court **DISMISS** Plaintiff's due process and equal protection claims. The Court, however, **FINDS** Plaintiff sets forth non-frivolous deliberate indifference claims against all Defendants. Accordingly, the Court **DIRECTS** the United States Marshal to serve Defendants with a copy of Plaintiff's Complaint, doc. 1, and this Order without prepayment of cost.

---

[1] The Clerk of Court is **DIRECTED** to remove "D. Haers" as a named Defendant in this action, doc. 9.

**BACKGROUND**[2]

Plaintiff filed this action on April 10, 2018.  Doc. 1.  Plaintiff then submitted an Amended Complaint, doc. 10, and seven letters.[3]  Plaintiff alleges that Defendants Hall, Stone, Augustin, Stewart, Lewis, Arebeck, Hyers, Cox, Johnson, and Bell were deliberately indifferent to his "obvious medical needs" and delayed necessary treatment, violating the Eighth Amendment.  Doc. 1 at 7–11; Doc. 10 at 1–11.

While playing basketball at Coffee Correctional Facility on December 6, 2016, Plaintiff dislocated his right shoulder.  Doc. 10 at 4.  Plaintiff describes "hear[ing] his right shoulder[] 'pop'" and experiencing a "tingling pain" which "extend[ed] down his right arm from his shoulder to his hand/fingers."  Id.  At the time, he described his pain as a "10/10."  Id.  Sometime later that day, MKyla Hand saw Plaintiff to evaluate the injury.  Id.  Plaintiff described his symptoms and pain to Ms. Hand, and Ms. Hand "noted Plaintiff's right shoulder present[ed] as . . . slumped[] and lower than Plaintiff's left shoulder."  Id.  It was determined that Plaintiff's right shoulder was "out of socket" and his "range of motion was notably decreased."  Id.  Ms. Hand spoke to McCleod, the on-duty nurse practitioner.  Id.  McCleod "noted the appointment was an urgent referral," prescribed 600 milligrams of ibuprofen for pain, and placed Plaintiff's arm in a

---

[2]  During frivolity review, "[t]he complaint's factual allegations must be accepted as true." Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

[3]  In his letters, Plaintiff followed up on the status of his case.  Doc. 4 (following up on the later-granted motion to proceed *in forma pauperis*); Doc. 9 (informing the Court that Defendant "D. Haers" is "not supposed to be" named as a Defendant, and that the "only Defendants" should be A. Hyers, G. Augustin, M. Arebeck, D. Cox, A. Johnson, K. Bell, Ricky Stone, Sharon Lewis, and D. Stewart); Doc. 11 (following up on his Amended Complaint); Doc. 12 (requesting the attorneys of record for each Defendant); Doc. 13 (asking whether Defendants have been served and providing addresses for each Defendant); Doc. 14 (inquiring about the status of the case and service); Doc. 15 (informing the Court that Defendant Hall, who was added in the Amended Complaint, no longer works at Coffee Correctional Facility and requesting the Court order service).

2

sling.  Id.  Plaintiff remained in "constant pain," and he experienced difficulty moving his right arm and sleeping in the top bunk assigned to him.  Id.

On December 13, 2016, Plaintiff saw Dr. Justin Weiss.  Id.  Dr. Weiss performed an x-ray on Plaintiff.  Id.  Defendant Augustin, the on-site doctor at the prison, received a copy of the x-ray, and it was determined to be "inconclusive."  Id.  Over the next several months, Plaintiff continued to experience pain and "difficulty sleeping and getting up/down from his top bunk."  Id.

On May 20, 2017, Plaintiff "threw a wad of paper away in the dorm trash can" and dislocated his right shoulder for the second time.  Id.  Plaintiff filled out a Health Services Request Form ("HSRF") that same day.  Id.  In that HSRF, Plaintiff stated that his right shoulder "redislocat[ed]" and described the continued pain and difficulty he experienced since his first injury.  Id.  Three days later, on May 23, 2017, Defendant Johnson treated Plaintiff "in sick call."  Id.  Plaintiff was prescribed 600 milligrams of ibuprofen twice a day for 10 days.  Id.  Dr. Weiss performed another x-ray that day and provided the results to Defendant Augustin.  Id.  Plaintiff alleges that Defendant Augustin, using "the same boilerplate language as before," found the results "were, yet again, inconclusive[.]"  Id. at 4–5.

Though prison medical staff scheduled a follow-up appointment for Plaintiff on May 31, 2017, when Plaintiff arrived at the medical unit, he was told his follow-up appointment would be rescheduled.  Id. at 5.  Plaintiff then filed a HSRF on June 5, 2017 which described continued pain in his right shoulder.  Id.  Defendant Johnson replied and stated an appointment was scheduled.  Id.  Plaintiff had a "noted pending appointment and call-out dated June 7, 2017," but on that day, Plaintiff was not seen at "sick call."  Id.  When Plaintiff arrived "at sick call," Officer Williams told Plaintiff that "his name was marked out[.]"  Id.  On June 13, 2017,

3

Plaintiff filed Grievance Number 243994, complaining about his denied appointment and lack of medical care. Id. Defendant Stone responded, denying the grievance. Defendant Stewart and Defendant Lewis also denied Plaintiff's grievances or appeals related to his lack of medical care. Id.

Plaintiff submitted another HSRF on June 29, 2017. Id. In that HSRF, Plaintiff inquired as to whether Defendant Augustin "had approved an MRI to be performed on [Plaintiff's] right shoulder." Id. Defendant Cox responded to the HSRF on the same day, telling Plaintiff an "appointment [was] coming" and to "wait on call out." Id. Plaintiff received a call out "for an NA/PA appointment" around a month later on July 25, 2017. Id. However, at that appointment, Plaintiff "was told that he had not asked for an MRI in June[.]" Id. Plaintiff "once again requested an MRI . . . be performed on his right shoulder." Id.

On August 22, 2017, Plaintiff "submitted another HSRF" asking whether Defendant Augustin scheduled an MRI for his right shoulder. Id. An individual named Nagy advised Plaintiff to submit another "sick call/HSRF." Id. Plaintiff did so on August 25, 2017. This HSRF described his ongoing shoulder pain, explained that the ibuprofen did not relieve that pain, and that Plaintiff "was awaiting proper treatment." Id. at 5–6. Defendant Johnson responded the same day and allowed Plaintiff to keep the ibuprofen on his person. Id. at 6.

Plaintiff had a medical appointment on August 30, 2017. Id. At that appointment, Defendant Johnson told Plaintiff an MRI "would be scheduled." Id. Defendant Johnson also observed that "Plaintiff continued to have a noticeable decrease [in] his range of motion of his right shoulder." Id. After Defendants Johnson and Augustin consulted, Plaintiff received a 30-day prescription for naproxen with two refills. Id.

The switch from ibuprofen to naproxen did not alleviate Plaintiff's pain. Id. Rather, on October 12, 2017, Plaintiff submitted another HSRF complaining of the continued pain in his right shoulder from the December 2016 and May 2017 dislocations. Id. That same day, Nagy responded and told Plaintiff "to fill out another HSRF." Id. Plaintiff, as instructed, filled out another HSRF "noting the same complaints" on October 18, 2017. Id. On October 20, 2017, Defendant Bell responded and told Plaintiff a follow-up appointment was scheduled. Id.

Defendant Bell saw Plaintiff for that follow-up appointment on October 20, 2017. Id. At that appointment, Plaintiff described the pain in his right shoulder as a "6/10." Id. Plaintiff explained that the naproxen "was not working." Id. Defendant Bell and Defendant Augustin consulted, and Defendant Bell told Plaintiff another follow-up appointment was scheduled. Id. That follow-up occurred on October 30, 2017. Id. The medical staff increased Plaintiff's naproxen prescription, though Plaintiff told staff that naproxen did not alleviate his pain.[4] Plaintiff filed Grievance Number 254115 the same day as his follow-up appointment. Id. Defendant Stone denied this grievance on November 13, 2017, stating that the "only solution" to Plaintiff's pain was to increase his medication. Id. "Plaintiff still had not received an MRI at this point, despite numerous documented requests." Id.

On November 27, 2017, Plaintiff submitted another HSRF which "reiterate[ed]" details about the shoulder pain he experienced and explained that the shoulder pain had spread to his back. Id. On November 30, 2017, Defendant Hyers responded and told Plaintiff to wait for a

---

[4]  In his Amended Complaint, Plaintiff writes that "he was only told that they would increase Plaintiff's pain medication, despite Plaintiff telling them it did relieve the pain in his right shoulder." Id. However, in his original Complaint, doc. 1, Plaintiff described the appointment on October 30, 2017 and wrote that medical staff told him only that "they would increase Plaintiff's medication, despite it not relieving [the] pain in [his] right shoulder." Doc. 1 at 10. Thus, the Court finds that Plaintiff intended to write "didn't" instead of "did" when describing whether naproxen eased his pain in his Amended Complaint. His use of the word "did" is inconsistent with other factual recitations in his Amended Complaint and makes little sense in the context of the sentence.

5

"call out" for a follow-up appointment. Id. Plaintiff "was seen by an NA/PA" on December 12, 2017. Id. At that appointment, Plaintiff described his shoulder pain and again requested an MRI. Id. He also asked about receiving physical therapy. Id.

Plaintiff filed this action on April 10, 2018 and submitted an Amended Complaint around September 11, 2018. Docs. 1, 10. Plaintiff alleges, in both his original and Amended Complaints, that he "still experiences continued pain in his right shoulder" and that prison medical staff refuses to provide "an MRI, the opinion of an orthopedic doctor, and/or physical therapy for his . . . medical condition." Doc. 10 at 7. Plaintiff contends that this "continued delay in treatment[] has and will continue . . . to cause long-term damage to Plaintiff's right shoulder." Id. Though Defendants have been "aware of [Plaintiff's] obvious medical condition[] since it occurred," Defendants "continue to ignore it" and have not provided Plaintiff an "adequate diagnosis, treatment, or therapy." Id.

Plaintiff alleges the denial of medical care he experienced is part of a "systemic, accepted practice . . . driven by [the] financial goals [of] CoreCivic ([the] owner of Coffee Corr[ectional] Facility) and Correct Care Solutions[.]" Id. at 7. He writes that Defendants Hall, Stone, Lewis, Stewart, and Augustin, as final policymakers at Coffee Correctional Facility, "purposefully and with deliberate indifference, directly or indirectly, den[ied] adequate medical treatment [to] Plaintiff, by creating or conspiring with others . . . to create and enforce written and unwritten policies, customs[,] or practices which allowed or gave tacit authorization to all his subordinates . . . to intentionally deny Plaintiff's obvious medical issues . . . ." Id. at 8–11. He also alleges that their subordinates (Defendants Arebeck, Hyers, Cox, Johnson, and Bell) violated his constitutional rights through actions taken pursuant to these "unwritten policies, customs[,] and practices[.]" Id.

As relief, Plaintiff requests a declaratory judgment, an injunction to "force" Defendants to treat his injury, as well as $15,000 in compensatory damages and $30,000 in punitive damages "against each [D]efendant, jointly and [severally,]" recovery of court costs, and "all other relief this honorable Court deems just, proper, and equitable." Id. at 12.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).

When reviewing a complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court

must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . .") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)).  However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules.  McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.  Plaintiff's Amended Complaint, Doc. 10

On September 11, 2018, Plaintiff filed an Amended Complaint.  Doc. 10.  The Amended Complaint is substantially similar to his original Complaint in most respects.  Docs. 1, 10.  However, there are two significant differences.  First, the Amended Complaint contains

additional requested relief.  Doc. 1 at 12; Doc. 10 at 12.  Second, the Amended Complaint adds Defendant Hall and refers to a "Defendant Nagy."[5]  Doc. 1 at 1; Doc. 9; Doc. 10 at 1.

"A plaintiff has a right to amend a complaint once as a matter of course so long as no responsive pleading has been filed."  Toenniges v. Georgia Dep't of Corr., 502 F. App'x 888, 889 (11th Cir. 2012).  Moreover, "parties may be added or dropped when an amendment is made to a complaint as a matter of course."  McLellan v. Miss. Power & Light Co., 526 F.2d 870 (5th Cir. 1976), *modified on other grounds*, 545 F.2d 919 (5th Cir. 1977); Henry v. Youngstown Buick/Pont/GMAC Truck Co., No. 1:11-cv-3464, 2012 WL 13009227, at *1 (N.D. Ga. May 30, 2012); Pretty Punch Shoppettes, Inc. v. Creative Wonders, Inc., 750 F. Supp. 487, 493 (M.D. Fla. 1990).

Because Plaintiff's Complaint has "not yet been served" on any Defendant and no Defendant has filed a responsive pleading, Plaintiff may amend his Complaint once as a matter of course without permission from the Court.  Toenniges, 502 F. App'x at 890; Oliver v. Fuhrman, 695 F. App'x 436, 439 (11th Cir. 2017); see also Fed. R. Civ. P. 15(a)(1).  Thus, Plaintiff's Amended Complaint is the operative filing in this action.  Schreane v. Middlebrooks, 522 F. App'x 845, 847 (11th Cir. 2013) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." (quoting Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982))); Gross v. White, 340 F. App'x 527, 534 (11th Cir. 2009).

---

[5]  The fact section of Plaintiff's Amended Complaint contains two mentions of a "Defendant Nagy."  Id. at 5–6.  However, Plaintiff does not name a "Nagy" as a Defendant in the caption of his case, in the section describing the parties to the action, nor anywhere else in his Amended Complaint or in his other pleadings.  Doc. 10.  In contrast, in the same Amended Complaint, Plaintiff adds Defendant Hall to the action by listing him in the caption and on the list of parties to the action.  Id.  The Court does not view Plaintiff's two mentions of "Defendant Nagy" as an attempt to add a new Defendant in this action.  If Plaintiff desires to name Nagy as a Defendant in his action, he may file a motion with the Court.

9

## II.   Deliberate Indifference to Medical Needs

The prohibition against cruel and unusual punishment in the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.  Farmer, 511 U.S. at 828.  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).  Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Ross v. Corizon Med. Servs., 700 F. App'x 914, 916 (11th Cir. 2017) (quoting Estelle, 429 U.S. at 106).

Thus, in order to prove a deliberate indifference to medical care claim, a prisoner must: (1) satisfy the objective component by showing that he had a serious medical need; (2) satisfy the subjective component by showing that the prison official acted with deliberate indifference to his serious medical need; and (3) show that the injury was caused by the defendant's wrongful conduct.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  As to the first component, a medical need is serious if it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id.

Under the second, subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995).  Thus, the subjective

component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[6] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).

In the medical context, deliberate indifference may arise from both disputes about the quality of the medical treatment and from prolonged delays in providing medical treatment. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Cty. Det. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.; Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). Rather, a plaintiff must show more than "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" in order to support a claim of deliberate indifference. Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505). In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the Court considers: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Goebert, 510 F.3d at 1327; Farrow v. West, 320 F.3d 1235, 1246 (11th Cir.

---

[6] Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is inconsistent. Compare Goebert, 510 F.3d at 1327, with Bingham, 654 F.3d at 1176. In Melton, the Eleventh Circuit directly addressed this discrepancy and found "more than mere negligence" to be the appropriate standard. 841 F.3d at 1223 n.2. Accordingly, this Court will apply the "more than mere negligence" standard.

11

2003); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) ("Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours. . . .").

Plaintiff has stated two non-frivolous claims against Defendants for deliberate indifference to his serious medical needs: one related to the quality of care provided and the other arising from the alleged delay in treatment. In his Complaint, Plaintiff alleges: (1) he had a serious medical need (a worsening shoulder condition); (2) Defendants—the prison medical staff responding to his health assistance requests and the prison officials creating the policies the staff acted under—knew of this need; and (3) Defendants' method of treatment (prescribing naproxen and ibuprofen) did not adequately address Plaintiff's injury. According to Plaintiff, Defendants merely provided Plaintiff over-the-counter pain medication despite Plaintiff's insistence that it did not help address his pain or the underlying cause of that pain. Defendants failed to provide Plaintiff with any other form of treatment, such as physical therapy, to address his limited mobility, and to prevent continued loss of movement or future dislocations. As a consequence, Plaintiff alleges that he continues to experience pain and a loss of movement in his shoulder. These allegations show more than a "simple difference in medical opinion" between the medical staff and Plaintiff. See Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505). Such limited treatment, which failed to either address the pain or identify the cause of the injury, is enough to create a non-frivolous claim that Defendants either decided to "take an easier but less efficacious course of treatment" or that the treatment was so cursory, it "amount[ed] to no treatment at all." Bingham, 654 F.3d at 1176. At this stage of review, this is enough to create a non-frivolous showing that Plaintiff did not receive minimally adequate medical care for his condition.

Additionally, Plaintiff's allegations support a non-frivolous claim that the treatment he received and the continued delay of treatment amounts to more than mere negligence. After two inconclusive x-rays, Defendants continually postponed Plaintiff's MRI, which may have diagnosed an underlying skeletal or muscular condition. Defendants provided Plaintiff ibuprofen and naproxen after two shoulder dislocations, despite Plaintiff's continued reports of ongoing pain and a limited range of movement. McElligott, 182 F.3d at 1257 (reversing denial of summary judgment when, despite plaintiff-inmates "complaints about the pain he was suffering," prison staff "basically did nothing to alleviate that pain" other than prescribing Tylenol, Pepto-Bismol, and another anti-nausea drug). Plaintiff contends the delay in proper treatment caused long-term damage to his right shoulder. Doc. 1 at 11. Finally, Plaintiff alleges the delay did not occur for medical reasons but rather due the prison's "financial goals" and cost-cutting measures. Id. at 11. Accordingly, Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim shall proceed against all Defendants.

## II.  Fourteenth Amendment Claims

In his Amended Complaint, Plaintiff attempts to bring claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, as well as under the Eighth Amendment. Doc. 10 at 1, 8–11. Passing references to the Fourteenth Amendment, absent any relevant factual allegations, do not create a corresponding claim for relief. "Although the court will hold *pro se* pleadings to a less stringent standard and construe the complaint more liberally, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" Langlois v. McGrotty, No. 8:09-cv-1421, 2009 WL 3416664, at *1 (M.D. Fla. Oct. 19, 2009) (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)). While Plaintiff alleges facts which support relief for Eighth Amendment violations, the Amended Complaint

13

contains no facts upon which Plaintiff's due process or equal protection claims could rest. Doc. 10 at 2–7.

### A.      Due Process

"Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners." Andujar v. Rodriguez, 486 F.3d 1199, 1203 (11th Cir. 2007); Keele v. Glynn County, 938 F. Supp. 2d 1270, 1290 n.28 (S.D. Ga. 2013).

Here, Plaintiff is a convicted prisoner and must bring claims for inadequate medical treatment under the Eighth Amendment, not the Fourteenth. The only factual allegations contained in his Amended Complaint (and in his other pleadings) relate to Plaintiff's medical treatment. Plaintiff offers no additional factual basis on which his due process claim could rest. Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's due process claim.

### B.      Equal Protection

To state a valid equal protection claim, a prisoner must show: (1) that he has been treated differently from other "similarly situated" inmates; and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as religion. Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001). Additionally, a prisoner must demonstrate that the defendants were motivated by a discriminatory intent or purpose. Muhammad v. Sapp, 388 F. App'x 892, 899 (11th Cir. 2010) Parks v. City of Warner Robins, 43 F.3d 609, 616 (11th Cir. 1995).

Plaintiff contends that denial of adequate medical treatment is a "systemic, accepted practice" at Coffee Correctional Facility which is motivated, not by a discriminatory intent, but by the prison's "financial goals." Doc. 10 at 7. He fails to plead any facts showing he received

14

different, less adequate treatment than other, similarly situated inmates.  I, therefore, **RECOMMEND** the Court **DISMISS** Plaintiff's equal protection claim.

## CONCLUSION

I **RECOMMEND** the Court **DISMISS** Plaintiff's due process and equal protection claims.  However, I **FIND** that Plaintiff alleges non-frivolous deliberate indifference claims against Defendants.  Those claims shall proceed against all Defendants.  The Court **ORDERS** that a copy of Plaintiff's Complaint, doc. 1, and a copy of this Order be served upon all Defendants by the United States Marshal without prepayment of cost.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.**

### INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the Marshal will first mail a copy of the complaint to defendants by first-class mail and request that defendants waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.7.  Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until60 days after the date that the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer.  Local R. 26.1.  Defendants shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the

deposition and advise him that he may serve on Defendants, in a sealed envelope, within 10 days of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local R. 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Id. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in

17

connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendants may initiate.  Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any

question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## **ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**

Defendants may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any

material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of June, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA